Jonathan J. Cunningham
TX Bar No. 00793574
Brian K. Norman
TX Bar No. 00797161
J.D. Reed
TX Bar No. 24075423
SHAMOUN & NORMAN, LLP
1755 Wittington Place
Suite 200, LB 25
Dallas, TX 75234
(214) 987-1745 (voice)/(214) 521-9033 (fax)
Attorneys for Plaintiff Shamoun & Norman, LLP and C. Gregory Shamoun

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SHAMOUN & NORMAN, LLP, and C. GREGORY SHAMOUN,** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. 3:14-1340-G** |
| *v.* | § | |
| | § | |
| | § | |
| **IRONSHORE INDEMNITY, INC.** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION OF DEFENDANT IRONSHORE INDEMNITY, INC.'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

**SHAMOUN & NORMAN, LLP**

/S/ Jonathan J. Cunningham__________
**JONATHAN J. CUNNINGHAM**
State Bar No. 00793574
jjc@snlegal.com

**BRIAN K. NORMAN**
State Bar No. 00797161
bkn@snlegal.com
**J.D. REED**
jd@snlegal.com
State Bar No. 24075423
1755 Wittington Place, Suite 200, LB25
Dallas, Texas 75234
(214) 987-1745
(214) 521-9033 fax
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that, in accordance the *Federal Rules of Civil Procedure*, a true and correct copy of the above and foregoing has been forwarded to:

**VIA CMRRR &**
**VIA CM/ECF Service &**
**VIA E-Mail to gwinslett@qslwm.com and tclary@qslwm.com**

Greg K. Winslett, Esq.
Tammy Clarey, Esq.
QUILLING, SELANDER, LOWNDS, WINSLETT, & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-211 fax

on this 29th day of September, 2014.

/S/ Jonathan J. Cunningham
**Jonathan J. Cunningham**

# TABLE OF CONTENTS


I. SUMMARY OF RESPONSE………………………………………………………. 5

II. SUMMARY JUDGMENT EVIDENCE…………………………………………… 7

III. UNDISPUTED FACTS AND FACTUAL ALLEGATIONS …………………….. 9

A. The Ironshore Insurance Policy……………………………………….…..... 9

B. Hill's Original Petition ……………………………………………………... 10

C. Hill's First Amended Petition ……………………………………………… 12

D. Hill's Second Amended Petition …………………………………………… 13

E. Hill's Third Amended Petition …………………………………………….. 14

IV. LEGAL STANDARD AND BURDENS OF PROOF …………………………….. 15

V. DUTY TO DEFEND STANDARD ……………………………………………….. 16

A. The Eight Corners of the Petition and Policy Determine the Duty to Defend 16

B. Only the Facts as Alleged in the Petition Are Relevant in a Duty to Defend Analysis ………………………………………………………………. 16

C. Any Doubt as to the Duty to Defend Must be Resolved in Favor of the Insured ………………………………………………………………… 17

VI. UNDER THE EIGHT CORNERS RULE, IRONSHORE OWED PLAINITFFS A DUTY TO DEFEND THE HILL LAWSUIT……………………………………… 17

A. The Hill Lawsuit Arose Out of Plaintiffs' Rendering of Professional Legal Services……………………………………………………………………... 17

1. The main cases cited by Ironshore are distinguishable………….. 21

2. Shore Chan is controlling………………………………………. 25

B. Hill Alleged that Plaintiffs Threatened to Influence the Case……………… 26

C. Ironshore Failed to Act Consistent with Insurance Industry Standards…….. 28

VII. CONCLUSION ………………………………………………………………. 30

## TABLE OF AUTHORITIES

### CASES

*Atl. Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Tex. App.—Dallas 1998, pet. denied)……………………………………………22, 27, 28

*Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483 (5th Cir. 2009) …… 16

*Cohen v. Empire Cas. Co.*, 771 P.2d 29 (Colo. App. 1989)…………………………….27

*Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80 (5th Cir. 1997).………………………..*20

*Essex Ins. Co. v. Clark, 3:09-CV-1196-B, 2010 WL 3911424 (N.D. Tex. Oct. 5, 2010)..*24

*Gen. Star Indem. Co. v. Gulf Coast Marine Associates, Inc., 252 S.W.3d 450*…………30

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118 (Tex. 2010)*…………………………………………………………..19

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365 (5th Cir. 2008) ………………………………………………………16, 18, 22

*Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F. Supp. 2d 505 (S.D. Tex. 2004)….22, 25

*Heyden Newport Chem Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22 (Tex 1965) ……….....18, 22

*Lib. Mut. Ins. Co. v. Graham*, 473 F.3d 596 (5th Cir.2006)……………………………..30

*Mid-Continent Cas. Co. v. JHP Dev.*, Inc., 557 F.3d 207 (5th Cir. 2009) ……………....16, 17

*N. Co. Mut. Ins. Co. v. Davalos*, 140 S.W. 3d 685 (Tex. 2004) ………………………....13

*Millis Dev. & Constr., Inc. v. America First Lloyd's Ins. Co.*, No. H-10-3260, 2011 WL 3567331 (S.D. Tex. Aug. 12, 2011) …………………………18

*Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004) …………..16, 17

*Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F. Supp. 2d 668 (S.D. Tex. 2002) ……………………………………………………18, 20

*Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469 (5th Cir. 2009) ……………......17

*Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex. 1984)……………………………….24

*Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*,
856 F. Supp. 2d 891 (N.D. Tex. 2012) ……………………………………………………18, 27, 28

*St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881 (Tex. App. 1999)………..18

*S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
CIV.A. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008)………………………24

*Tana v. Professionals Prototype I Ins. Co.*,
47 Cal. App. 4th 1612, 55 Cal. Rptr. 2d 160 (1996)…………………………………….26, 27

*Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760 (Tex. App. 2006) …………...17

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487 (Tex. 2008)………………………..19

**RULES**

Fed. R. Civ. P. 56(a) ……………………………………………………………………..16

Plaintiffs Shamoun & Norman, LLP ("S&N") and C. Gregory Shamoun ("Mr. Shamoun" and, collectively with S&N, "Plaintiffs") submit the following brief in support of their response ("Response") to motion for summary judgment of Defendant Ironshore Indemnity, Inc. ("Ironshore").

## I. SUMMARY OF RESPONSE

This insurance lawsuit arises out of a denial of claim made on a professional liability policy issued by Ironshore to S&N and Mr. Shamoun. To protect against potential lawsuits, Plaintiffs purchased a professional liability policy ("Policy") from Ironshore. The insuring agreement in the Policy included coverage for any claim "arising out of the rendering of or failure to render Professional Legal Services."

On July 19, 2011, Plaintiffs were sued by Albert G. Hill, Jr. ("Hill"), in Cause No. DC-10-14714, in Dallas County ("Hill Lawsuit"). Although the Hill Lawsuit contained allegations of conspiracy, extortion, and breach of fiduciary duty on the part of Plaintiffs, in its Motion, Ironshore asserts that the Hill Lawsuit "is a purely commercial dispute." To the contrary, Hill alleged that he was damaged by Plaintiffs "asserting undue influence and pressure" on him, and that this "pressure" and "misconduct" affected Plaintiffs' rendering of legal services, such that "[he] was forced to replace them as his counsel." Hill pled that Plaintiffs approached him at a critical juncture of the case and pressured him to agree to an incentive bonus, "tim[ing] their presentation… to immediately precede [a]… court-ordered settlement conference and [an] impending… federal trial." Hill further pled that Plaintiffs tried to use their knowledge of the impending settlement conference and trial to their own benefit and to Hill's detriment. In light of these allegations, it is reasonable to conclude that Hill's theory was that Plaintiffs would negatively influence the case if he did not agree to the bonus. Hill also alleged that Plaintiffs

breached their fiduciary duty by revealing confidential information. Hill amended his pleadings three times, and pled facts in support of this theory in *each* of his four petitions (collectively, the "Petitions").[1]

Based on the four corners of the Petitions, and the four corners of the Policy, Ironshore owed Plaintiffs a duty to defend. Ironshore breached its duty by failing to provide Plaintiffs with a defense in the Hill Lawsuit. In its Motion, Ironshore mischaracterizes Hill's allegations, concluding that "no complaints were made regarding the actual legal work or advice that [S&N] provided." However, on August 5, 2011, in correspondence sent to Plaintiffs, Ironshore reached a strikingly different conclusion:

> It is **unclear** whether the particular actions complained of in the Third Party Complaint (allegations of conspiracy, for example) arise out of the provision of Professional Legal Services. [emphasis added].

Recognizing its obligation to resolve doubts in favor of the insured, Ironshore acknowledged its duty to defend and agreed *under a reservation of rights* to appoint counsel for Plaintiffs to defend against the Hill Lawsuit. However, having created a clear conflict of interest by agreeing to defend only under a reservation of rights, Ironshore also attempted to limit Plaintiffs' choice of defense counsel. In its August 5, 2011 correspondence to Plaintiffs, Ironshore wrote:

> [W]e will not agree to your request to use Attorney Tostrud in connection with this matter. The following firms in Texas are available as alternatives to represent the interests of the Insured with respect to this matter: Beirne Maynard & Parsons; Gordon & Rees; Holden Carr & Skeens; Wilson Elser Moskowitz Edelman & Dicker. Once you have had a chance to review this list, please let [Ironshore] know which firm you would like to represent your interests in this matter.

[1] *See* Exhibit B – Third Party Plaintiff's Original Petition ("Original Petition"), Appendix ("App.") 68-73; Exhibit C – Third Party Plaintiff's and/or Counter-Claimant's First Amended Petition ("First Amended Petition"), App. 74-80; Exhibit D – Second Amended Third-Party Petition and Counter-Claim ("Second Amended Petition"), App. 81-93; Exhibit E – Third Amended Third-Party Petition and Counter-Claim ("Third Amended Petition"), App. 94-109.

On August 8, 2011, Plaintiffs demanded an unqualified defense. In retribution of the Insured's request, Ironshore withdrew the defense posited on August 5, 2011, and pretextually asserted that the action complained of in the Hill Lawsuit, which was "unclear" five days earlier, was now claimed to have arisen solely "out of a fee dispute." The only factual underpinning that occurred between Ironshore's provision of a defense on August 5 and withdrawing the defense five days later was Plaintiffs' request to Ironshore for an *unqualified* defense; ***there had been no additional pleadings filed by Hill.***

The Hill Lawsuit, as pled, was not a mere fee dispute between Plaintiffs and Hill. Even a cursory reading of the Petitions demonstrates a case of alleged misconduct and acts directly related to Plaintiffs' rendering of legal services. Based on the four corners of the Petitions *and* the four corners of the Policy, Hill's allegations were clearly sufficient to trigger Ironshore's duty to defend pursuant to the Policy, a conclusion Ironshore itself reached on August 5, 2011.

Plaintiffs have met their burden on summary judgment. Plaintiffs demonstrated that the allegations contained in the Hill Lawsuit fell within the scope of the Policy and, coupled with the principle that allegations must be liberally construed in favor of coverage, with all doubts resolved in favor of the duty to defend, it is clear as a matter of law that Ironshore breached the Policy by failing to provide Plaintiffs with a defense.

## II. SUMMARY JUDGMENT EVIDENCE

In support of this Response, Plaintiffs rely on the pleadings on file in this action and the following summary judgment proof filed contemporaneously herewith in an Appendix to Plaintiffs' Response in Opposition of Defendant's Motion for Summary Judgment. All of the following summary judgment evidence is incorporated into the Response by reference, as if fully set forth herein.

- Exhibit A – Affidavit of Brian K. Norman

- Exhibit A-1 – July 27, 2011 letter from Plaintiffs to Anthony Fornaro, insurance broker and agent for Ironshore
- Exhibit A-2 – August 5, 2011 letter from Ironshore to Plaintiffs
- Exhibit A-3 – August 8, 2011 letter from Plaintiffs to Ironshore
- Exhibit A-4 – August 10, 2011 letter from Ironshore to Plaintiffs
- Exhibit A-5 – November 22, 2011 letter from Amy Elizabeth Stewart to Ironshore
- Exhibit A-6 – December 6, 2011 letter from Alicia G. Curran to Amy Elizabeth Stewart
- Exhibit A-7 – December 19, 2011 letter from Plaintiffs to Ironshore
- Exhibit A-8 – December 23, 2011 letter from Ironshore to Plaintiffs
- Exhibit A-9 – May 31, 2012 letter from Plaintiffs to Ironshore
- Exhibit A-10 – June 21, 2012 letter from Ironshore to Plaintiffs
- Exhibit A-11 – Engagement Letter between Mr. C. Gregory Shamoun and Cobb Martinez Woodward PLLC
- Exhibit A-12 – Copy of Ironshore's "Lawyers Professional Liability Policy" – Policy Number 000500402 (produced by Ironshore pursuant to Rule 26(a)(1) disclosures)
- Exhibit B – Certified Copy of the Third Party Plaintiff's Original Petition ("Original Petition") in *Shamoun & Norman, LLP v. Albert G. Hill, Jr.; Joseph Keith Benedict; Tyree B. Miller; and AG Hill Partners, LLC, and Albert G. Hill, Jr. v. C. Gregory Shamoun, and Shamoun & Norman, LLP*, Cause No. DC-10-14714, in the 160th District Court, Dallas County, Texas ("Hill Lawsuit")
- Exhibit C – Certified Copy of the Third Party Plaintiff's and/or Counter-Claimant's First Amended Petition ("First Amended Petition") in the Hill Lawsuit
- Exhibit D – Certified Copy of the Second Amended Third-Party Petition and Counter-Claim ("Second Amended Petition") in the Hill Lawsuit
- Exhibit E – Certified Copy of the Third Amended Third-Party Petition and Counter-Claim ("Third Amended Petition") in the Hill Lawsuit
- Exhibit F – Certified Copy of "Final Judgment" in the Hill Lawsuit
- Exhibit G – Affidavit of Michael W. Huddleston
- Exhibit G-1 – Expert Report of Michael W. Huddleston

## III. UNDISPUTED FACTS AND FACTUAL ALLEGATIONS

### A. *The Ironshore Insurance Policy*

Ironshore Indemnity, Inc. issued policy number 000500402 entitled "Lawyers Professional Liability Policy" to the "Named Insured" Shamoun & Norman, LLP, for a policy period of June 1, 2011 until June 1, 2012.[2] The Policy provided that if the "Named Insured" was a limited liability partnership, the Policy covered "each lawyer who is a partner thereof including

[2] *See* Exhibit A-12, App. 62.

any incorporated partner…."[3] Mr. Shamoun was President of C. Gregory Shamoun, P.C., the Managing Partner of Shamoun & Norman, LLP, throughout the policy period.[4]

According to the Policy:

> [Ironshore] shall have the right and duty to defend any **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** and arising out of the rendering of or failure to render **Professional Legal Services**… seeking **Damages** to which this insurance applies even if any of the allegations are groundless, false, or fraudulent. [emphasis in original].[5]

A "claim" was defined in the Policy to mean "a demand received by an Insured for money or services, including the service of suit...."[6] The Policy defined "Professional Legal Services" as "legal services and activities performed for others as a lawyer…."[7] The Policy defined "Damages" as a "monetary judgment or settlement…."[8]

The Policy contained a $1,000,000 Limit of Liability (inclusive of Claim Expenses).[9] "Claim Expenses" were defined to mean "fees charged by any lawyer… and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim…."[10]

**B. *Hill's Original Petition***

On July 19, 2011, in Cause No. DC-10-14714, Hill filed his Original Petition against S&N and Mr. Shamoun, asserting Plaintiffs had a fiduciary duty to Hill which they breached.[11] In the Original Petition, Hill alleged that after he "retained [Plaintiffs] to represent him" in litigation and, when the "dispute was going to be resolved," Plaintiffs "conspired with Frances

[3] *See* Exhibit A-12, App. 50.
[4] *See* Exhibit A, App. 1-2.
[5] *See* Exhibit A-12, App. 49.
[6] *See* Exhibit A-12, App. 50.
[7] *See* Exhibit A-12, App. 51.
[8] *See* Exhibit A-12, App. 50.
[9] *See* Exhibit A-12, App. 62.
[10] *See* Exhibit A-12, App. 50.
[11] *See* Exhibit B, App. 68-73.

Johnson Wright [Wright] for her to approach Mr. Hill with the proposition that 'he should' enter into an additional compensation 'package.'"[12] Hill further alleged:

> Mr. Shamoun and S&N knew… that confidential information of Mr. Hill's would be revealed, and therefore, attempted to exert unconscionable pressure on Mr. Hill to extort him in violation of the fiduciary duty Mr. Shamoun and S&N had to place their client's best interests above their own interests at all times.[13]

Based on these allegations and others, Hill sued Plaintiffs for breach of fiduciary duty, seeking actual damages, exemplary damages, disgorgement, and attorneys' fees.[14]

Upon receipt of the Original Petition, S&N and Mr. Shamoun timely presented a demand to Ironshore for a defense under the Policy.[15] On August 5, 2011, Ironshore accepted the Original Petition as a Claim[16] and stated:

> It is unclear whether the particular actions complained of in the Third Party Complaint (allegations of conspiracy, for example) arise out of the provision of Professional Legal Services.[17]

Still, Ironshore agreed to provide a defense to the Claim under a reservation of rights and listed "available" counsel, requesting that Plaintiffs "please let [Ironshore] know which firm you would like to represent your interests in this matter."[18] On August 8, 2011, in light of Ironshore's reservation of rights defense and the conflict of interest it created, Plaintiffs requested Ironshore provide "an unqualified defense in this matter."[19] On August 10, 2011, in correspondence to Plaintiffs, Ironshore stated Hill's "third-party petition arises out of a fee dispute" and "the third-party petition filed by Albert G. Hill, Jr. ("Hill") does not fall within the

---

[12] *See* Exhibit B, App. 69.
[13] *See* Exhibit B, App. 70.
[14] *See* Exhibit B, App. 69-71.
[15] *See* Exhibit A-1, App. 3-4.
[16] *See* Exhibit A-2, App. 5.
[17] *See* Exhibit A-2, App. 7.
[18] *See* Exhibit A-2, App. 8.
[19] *See* Exhibit A-3, App. 9.

coverage available under [the Policy] issued to Shamoun & Norman…"[20] Although five days previously stating it was "unclear" whether Hill's allegations arose "out of the provision of Professional Legal Services," Ironshore now asserted that Hill's Original Petition "[did] not satisfy the policy's requirement that the conduct at issue is 'professional legal services.'"[21]

Given Ironshore's position to deny coverage and its denial of a defense, Plaintiffs were forced to provide their own defense and engaged Cobb Martinez Woodward PLLC ("Cobb Martinez") to defend against the Hill Lawsuit.[22] At Plaintiffs' expense, Cobb Martinez defended Plaintiffs against Hill's allegations through a trial in which the jury rejected Hill's claims and a final judgment was rendered that Hill take nothing regarding Hill's claims against Plaintiffs.[23]

### C. *Hill's First Amended Petition*

Prior to trial, Hill amended his pleadings several times.[24] Hill amended the Original Petition on August 19, 2011, when he filed his First Amended Petition.[25] In the First Amended Petition, Hill again alleged that "when it became apparent that this litigation dispute was going to be resolved in a manner acceptable to Mr. Hill, then Mr. Shamoun and S&N conspired with [Wright] for her to approach Mr. Hill with the proposition that 'he should' enter into an additional compensation 'package.'"[26] Based on this allegation and others, the First Amended Petition included two causes of action: (1) breach of fiduciary duty and (2) civil conspiracy.[27] In the First Amended Petition, Hill sought to recover actual damages, exemplary damages,

[20] *See* Exhibit A-4, App. 10.
[21] *See* Exhibit A-4, App. 13.
[22] *See* Exhibit A-11, App. 40-48.
[23] *See* Exhibit F, App. 110-114.
[24] *See* Exhibits C-E, App. 74-109.
[25] *See* Exhibit C, App. 74-80.
[26] *See* Exhibit C, App. 75.
[27] *See* Exhibit C, App. 76-77.

disgorgement, and attorneys' fees.[28]

On November 22, 2011, Plaintiffs engaged attorney Amy Elizabeth Stewart to reassert Plaintiffs' demand for a defense under the Policy.[29] In correspondence to Ironshore, Ms. Stewart argued that the Insurer could not, "in good faith," maintain "that [Hill's] allegations exist independently of Professional Legal Services."[30] She reinforced Plaintiffs' August 8, 2011 request for Ironshore to provide an unqualified defense, observing that "because 'the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends,'[31] a significant conflict of interest exists that prevents Ironshore from conducting or controlling the defense."[32]

Nonetheless, Ironshore continued its denial of a defense and Cobb Martinez continued to represent and defend Plaintiffs in the Hill Lawsuit, during which time Plaintiffs incurred significant defense expenses.[33]

**D. *Hill's Second Amended Petition***

On December 16, 2011, Hill filed his Second Amended Petition.[34] In the Second Amended Petition, Hill pled that "Mr. Shamoun and S&N conspired with [Wright]" and "[s]hortly before a court-ordered mediation… and a trial setting… Mr. Shamoun, S&N, and [Wright] breached their fiduciary duties to Mr. Hill by asserting undue influence and pressure on Mr. Hill."[35]

The Second Amended Petition included five causes of action: (1) Breach of Fiduciary Duty; (2) Imposition of a Constructive Trust; (3) Civil Conspiracy; (4) Declaratory Relief; and

[28] *See* Exhibit C, App. 78.
[29] *See* Exhibit A-5, App. 15-22.
[30] *See* Exhibit A-5, App. 22.
[31] *See* Exhibit, A-5, App. 22 (quoting *N. Co. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 689 (Tex. 2004)).
[32] See Exhibit A-5, App. 22.
[33] *See* Exhibit A, App. 1-2.
[34] *See* Exhibit D, App. 81-93.
[35] *See* Exhibit D, App. 83.

(5) Breach of Contract.[36] The Second Amended Petition sought to recover actual damages, exemplary damages, disgorgement, and attorneys' fees.[37]

On December 19, 2011, Plaintiffs sent Ironshore a letter requesting Ironshore to reconsider its previous coverage denial and again demanding Ironshore provide a defense.[38] As before, in a response dated December 23, 2011, Ironshore denied coverage and wrongfully refused to defend the claim.[39]

As a result of Ironshore's refusal, Cobb Martinez continued to defend Plaintiffs in the Hill Lawsuit, during which time Plaintiffs paid defense expenses.[40]

**E. *Hill's Third Amended Petition***

On May 24, 2012, Hill filed his Third Amended Petition.[41] In his third and final petition, Hill alleged that "Mr. Shamoun and Ms. Wright timed their presentation of this proposed midstream change to their hourly engagement agreements to immediately precede the May 5, 2010 court-ordered settlement conference and the impending May 10, 2010 federal trial"[42] and "[g]iven the misconduct by [Plaintiffs]… Mr. Hill was forced to replace them as his legal counsel…"[43] Hill alleged Plaintiffs breached their fiduciary duty by "threatening to disclose (and in fact disclosing) Mr. Hill's confidential information that would not have been disclosed otherwise,"[44] and that Plaintiffs attempted "to extort money from Mr. Hill in breach of their

[36] *See* Exhibit D, App. 84-90.
[37] *See* Exhibit D, App. 90-91.
[38] *See* Exhibit A-7, App. 31.
[39] *See* Exhibit A-8, App. 32-35.
[40] *See* Exhibit A, App. 1-2.
[41] *See* Exhibit E, App. 94-109.
[42] *See* Exhibit E, App. 96.
[43] *See* Exhibit E, App. 96-97.
[44] *See* Exhibit E, App. 101.

fiduciary duties."[45] The Third Amended Petition sought to recover actual damages, exemplary damages, disgorgement, and attorneys' fees.[46]

On May 31, 2012, Plaintiffs sent Ironshore correspondence that enclosed a copy of the Third Amended Petition.[47] In this correspondence, Plaintiffs once again demanded Ironshore assume Plaintiffs' defense.[48] On June 21, 2012, Ironshore reaffirmed its denial of coverage and wrongfully refused to provide a defense,[49] asserting that the Third Amended Petition "[did] not seek damages for liability arising out of professional legal services performed for others as a lawyer."[50]

As a result, Cobb Martinez continued to defend Plaintiffs in the Hill Lawsuit, and Plaintiffs continued to pay defense expenses out of their own pockets.[51]

## IV. LEGAL STANDARD AND BURDENS OF PROOF

Summary judgment is appropriate when a movant shows that there is no genuine dispute as to any material fact.[52] The insured carries the initial burden of establishing that a claim is potentially within the policy's coverage.[53] Once the insured satisfies this initial burden, the insurer has the burden to establish that the plain language of the policy limits or excludes all of the insured's claims.[54] Further, the interpretation of exclusions is narrowly construed against the insurer, and reasonable inferences must be made in the insured's favor.[55] When any provision in an insurance contract has more than one reasonable interpretation, favor must be granted to the

[45] *See* Exhibit E, App. 102.
[46] *See* Exhibit E, App. 106-107.
[47] *See* Exhibit A-9, App. 36.
[48] *See* Exhibit A-9, App. 36.
[49] *See* Exhibit A-10, App. 37-39.
[50] *See* Exhibit A-10, App. 37.
[51] *See* Exhibit A, App. 1-2.
[52] Fed. R. Civ. P. 56(a).
[53] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).
[54] *Id*.
[55] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008).

insured, even in cases when the insurer's interpretation is more reasonable.[56] The Fifth Circuit has expressly recognized that "when the language of a policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured."[57] Further, "[w]here the question of interpretation involves an exception or limitation on the insurer's liability under the policy, an even more stringent construction is required."[58]

## V. DUTY TO DEFEND STANDARD

### A. *The Eight Corners of the Petition and Policy Determine the Duty to Defend*.

The duty to defend arises when the facts alleged in the underlying complaint potentially state a cause of action falling within the terms of the policy.[59] Only the policy and the pleadings are relevant to the duty-to-defend inquiry.[60] Further, "a plaintiff's factual allegations that potentially support a covered claim are all that is needed to invoke the insurer's duty to defend."[61] "In Texas, the eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant."[62] "Resort to evidence outside the four corners of these two documents is generally prohibited."[63] "The Texas Supreme Court has never recognized any exception to the strict eight corners rule that would allow courts to examine extrinsic evidence when determining an insurer's duty to defend."[64]

---

[56] *Aubris Res. LP v. St. Paul Fire & Marine Ins*. Co., 566 F.3d 483, 486 (5th Cir. 2009).
[57] *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009).
[58] *Id*.
[59] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).
[60] *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009).
[61] *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009).
[62] *Id.*
[63] *Id.*
[64] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004).

**B. *Only the Facts as Alleged in the Petition Are Relevant in a Duty to Defend Analysis.***

The duty to defend is separate and distinct from and broader than the duty to indemnify.[65] The duty to defend is triggered by the allegations in the pleadings whereas the duty to indemnify is triggered by the actual facts establishing liability.[66] "[A]n insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations."[67] Given the well-developed case law establishing that the duty to defend is determined from the underlying petitions, this Court should confine its analysis to the Petitions and the Policy.

**C. *Any Doubt as to the Duty to Defend Must be Resolved in Favor of the Insured.***

All questions regarding whether a petition's allegations fall within the policy's coverage must be resolved in favor of the insured.[68] An "insured's claim need only be 'potentially' within the scope of coverage."[69] The pleadings should be construed liberally and all doubts regarding the duty to defend should be resolved in favor of coverage.[70] The eight-corners rule favors the insured because doubts as to coverage are resolved in the insured's favor.[71] "Once coverage has been found for any portion of a suit, an insurer must defend the entire suit."[72] This Court may also "draw inferences from the petition that may lead to a finding of coverage."[73] Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the

[65] *Id. at 527-28.*
[66] *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009).
[67] *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 765-66 (Tex. App. 2006).
[68] *Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F. Supp. 2d 668, 676 (S.D. Tex. 2002).
[69] *Id*. (quoting *King v. Dallas Fire Ins. Co.*, 27 S.W.3d 117, 121 (Tex. App. 2000)).
[70] *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 856 F. Supp. 2d 891, 896-97 (N.D. Tex. 2012).
[71] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).
[72] *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App. 1999).
[73] *Millis Dev. & Const., Inc. v. Am. First Lloyd's Ins. Co.*, 809 F. Supp. 2d 616, 629 (S.D. Tex. 2011).

complaint within the coverage of the policy.[74]

## VI. UNDER THE EIGHT CORNERS RULE, IRONSHORE OWED PLAINTIFFS A DUTY TO DEFEND THE HILL LAWSUIT

An application of the eight corners rule analysis in this case dictates that the Petitions alleged facts and claims of breaches of fiduciary duty related to the rendering of legal services to Hill by Plaintiffs, thus the duty to defend under the Policy arose as a matter of law.

### A. *The Hill Lawsuit Arose Out of the Plaintiffs' Rendering of or Failure to Render Professional Legal Services to Hill.*

Hill filed his Original Petition July 19, 2011, suing for breach of fiduciary duty and alleging Plaintiffs' "conduct and disregard [was] outrageous."[75] Hill alleged that Plaintiffs, while acting as counsel for Hill and engaged in settlement negotiations, conspired and attempted to extort Hill by threatening to influence the case if he did not agree to an incentive bonus. Although the factual allegations in the Hill Lawsuit constituted a claim "arising out of the rendering of or failure to render Professional Legal Services," in correspondence to Plaintiffs, Ironshore stated "[i]t is unclear whether the particular actions complained of in the Third Party Complaint (allegations of conspiracy, for example) arise out of the provision of Professional Legal Services."[76] Nevertheless, as stated supra, Texas law dictates that an insurer liberally construe the pleadings and resolve all doubts in favor of coverage.[77] Accordingly, Ironshore acknowledged its duty to defend and, under a reservation of rights, agreed to appoint counsel for Plaintiffs to defend against the Hill Lawsuit.[78] In response to Ironshore's positing a defense

---

[74] *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965) (quoting 50 A.L.R.2d 458).
[75] *See* Exhibit B, App. 69.
[76] *See* Exhibit A-2, App. 5.
[77] *See e.g.*, *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487 (Tex. 2008) (we resolve all doubts regarding the duty to defend in favor of the duty and construe pleadings liberally); also *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010) (insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage).
[78] *See* Exhibit A-2, App. 8.

under a reservation of rights, Plaintiffs demanded an unqualified defense. Ironshore responded to this demand by abruptly withdrawing its offer of *any* defense and denying coverage of the claim.[79] Thenceforth, Ironshore has mischaracterized and erroneously interpreted Hill's allegations, insisting the matter was merely a "fee billing collection."[80]

In its Motion, Ironshore now avers that Hill's allegations "are nothing more than a dispute regarding the solicitation of Hill to enter the contingency agreement."[81] This misplaced assertion completely ignores the *actual* allegations in Hill's petitions. Hill alleged facts and claims that the Plaintiffs' rendering of legal services were of such a nature as to be breaches of fiduciary duty, *requiring Hill to replace Plaintiffs as his legal counsel.* Accusing Plaintiffs of malpractice clearly beyond any "solicitation" or "fee dispute," Hill alleged that S&N and Mr. Shamoun (1) engaged in a deliberately timed conspiracy to extort Hill at a crucial point in the litigation; (2) breached their fiduciary duty during the attorney-client relationship; and (3) acted upon threats made to divulge Hill's confidential attorney-client information.

In Ironshore's Motion, the insurer contends that "Plaintiffs mischaracterize the four-corners of the Hill [Lawsuit] in a desperate attempt to insert legal services where they do not exist."[82] To the contrary, the actual allegations in the Petitions were more than sufficient to establish a claim "potentially" within the coverage of the Policy, the threshold set by Texas law.[83]

Hill alleged:

---

[79] *See* Exhibit A-4, App. 10.

[80] *Id.*

[81] Dkt. 27, p. 20.

[82] Dkt. 27, p. 25.

[83] *See, e.g., Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80 (5th Cir. 1997) (applying Texas law) (the court will look to see if the facts giving rise to the alleged actionable conduct, as stated within the eight corners of the complaint, constitute a claim potentially within the insurance coverage); *Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F. Supp. 2d 668 (S.D. Tex. 2002) (the duty to defend arises when the allegations potentially support claims for which there is coverage and does not depend on the ultimate truth or falsity of those factual allegations).

Mr. Shamoun and Ms. Wright approached Mr. Hill on the **eve of a scheduled mediation**, and they demanded that Mr. Hill agree to a "performance incentive bonus agreement," which was no more than a contingent fee. This constituted an overt act in furtherance of the **conspiracy** because they **exploited their relationship with their client** and placed themselves in a superior bargaining position to their client by demanding this unconscionable additional fee **at a critical time just prior to the Court ordered mediation** before a U.S. Magistrate and **shortly before the federal trial court setting.**[84] [emphasis added].

When it became apparent that this **litigation dispute was going to be resolved** in a manner acceptable to Mr. Hill, then **Mr. Shamoun and S&N conspired** with Frances Johnson Wright ("Ms. Wright") for her to approach Mr. Hill with the proposition that **"he should"** enter into an additional compensation "package" which Ms. Wright, S&N, and Mr. Shamoun described as a "performance incentive bonus agreement."[85] [emphasis added].

**S&N and Mr. Shamoun had a fiduciary duty to their client which they breached. This breach of fiduciary duty was intentional on the part of Mr. Shamoun and S&N and their conduct and disregard was outrageous.**[86] [emphasis added].

Mr. Shamoun and Ms. Wright are members of a combination of two or more people. The object of the combination was to accomplish an unlawful purpose by unlawful means: **to extort money from Mr. Hill in breach of their fiduciary duties.**[87] [emphasis added].

Mr. Shamoun and S&N knew, and had to know by virtue of filing a lawsuit against Mr. Hill, that confidential information of Mr. Hill's would be revealed, and therefore, **attempted to exert unconscionable pressure on Mr. Hill to extort him in violation of the fiduciary duty Mr. Shamoun and S&N had to place their client's best interests above their own interests at all times.**[88] [emphasis added].

[84] *See* Exhibit D, App. 87.
[85] *See* Exhibit B, App. 69.
[86] *See* Exhibit B, App. 69.
[87] *See* Exhibit D, App. 88.
[88] *See* Exhibit B, App. 70.

To conclude that Hill's allegations "involv[ed] 'professional legal services'" does not, as Ironshore asserts, require facts to be read into or out of any of the Petitions.[89] Indeed, in a continuing effort to avoid the present litigation, Plaintiffs engaged coverage counsel to reassert their demand that Ironshore assume the defense of the Hill Lawsuit. On November 22, 2011, in correspondence to Ironshore, attorney Amy Elizabeth Stewart ("Ms. Stewart") made a similar observation. Ms. Stewart wrote "[i]t cannot be said, in good faith, that [Hill's] allegations exist independently of Professional Legal Services."[90] Ms. Stewart stated that "the Petition unquestionably 'arose out of,' 'originated from,' or 'flowed from' the attorney-client relationship Hill had with the Insureds."[91]

Notwithstanding the reasonable arguments and controlling case law posited by Ms. Stewart, Ironshore reasserted its denial of a defense to Plaintiffs. On December 6, 2011, Ironshore responded to Ms. Stewart through correspondence from its own coverage counsel. In this letter, as in Ironshore's Motion, Ironshore maintained that "a professional liability insurer is not obligated to defend its insured against a fee dispute."

As the matter is now before the Court, Plaintiffs request only for the Court to interpret the allegations and the Policy in accordance with Texas law.[92] A reasonable interpretation of the Petitions and the Policy pursuant to these standards establishes that the Hill Lawsuit arose out of the rendering of or failure to render Professional Legal Services; specifically, it arose out of services provided to Hill as settlement counsel and Hill's assertions of actions undertaken which were claimed to be breaches of fiduciary duties. Moreover, the Hill Lawsuit also unquestionably

[89] Dkt. 27, p. 20.
[90] See Exhibit A-5, App. 22.
[91] *See* Exhibit A-5, App. 19.
[92] *See, e.g. Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365 (5th Cir. 2008) (the eight-corners rule favors the insured because doubts as to coverage are resolved in the insured's favor); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22 (Tex. 1965) (quoting 50 A.L.R.2d 458) (the general rule is that, where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend).

arose out of the attorney-client relationship between Hill and Plaintiffs, and not any clerical or administrative function as a fee billing dispute suggests.[93] Accordingly, Ironshore owed Plaintiffs a duty to defend and, by failing to defend, the Policy was breached.

**1. *The main cases cited by Ironshore are distinguishable.***

Ironshore primarily relies on two *Texas* cases in its Motion, *Atl. Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.*[94] and *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*[95] Both cases are inapposite. In *Susman Godfrey*, the lawsuit against the insured law firm was brought *not* by a client, but rather a defendant in a case the law firm had previously prosecuted. The defendant was a doctor, and the law firm represented a former patient in litigation against the doctor. After the case settled, the law firm allegedly sent a solicitation letter to another of the defendant's patients, informing the patient about the lawsuit in anticipation of also representing him against the doctor. The doctor sued the firm for defamation, alleging the insured law firm made false statements about him and violated the confidentiality provisions of the settlement agreement in the earlier lawsuit.

The court in *Susman Godfrey* held that the doctor's lawsuit against the insured law firm alleged an advertising injury under the firm's general liability policy, which specifically covered that type of injury. In denying coverage, the insurer argued that the policy's professional services exclusion precluded coverage for the lawsuit. The exclusion stated that "this insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' ***due***

---

[93] It is important to recognize that Hill brought a third-party claim against Mr. Shamoun, individually, wherein Mr. Shamoun was not a party to the underlying suit by S&N against Hill. At no time was Mr. Shamoun individually asserting claims against Hill, which Ironshore mischaracterizes as a "fee billing" dispute. To the contrary, Hill's claims asserted against Mr. Shamoun stood alone as a suit against Mr. Shamoun. In no way could Hill's claims against Mr. Shamoun be characterized as defensive in nature, but instead were affirmative claims Hill could have, and did, assert against Mr. Shamoun regardless of the underlying suit brought by S&N against Hill.

[94] *Atl. Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Tex. App.—Dallas 1998, pet. denied).

[95] *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F. Supp. 2d 505 (S.D. Tex. 2004).

***to*** the rendering or failure to render any professional service."[96] The insurer claimed that the phrase "professional services" includes "acts that are an integral aspect of the practice of law" and that "the solicitation of clients is an integral aspect."[97] The court disagreed. It concluded that the allegations regarding the solicitation letter were insufficient to trigger the professional services exclusion.

Ironshore asserts *Susman Godfrey* is analogous here, concluding "the Hill Claim arises out of S&N's 'solicitation' of Hill to enter into a contingency fee agreement."[98] Ironshore's self-serving conclusion is unsupported by this case. The question addressed in *Susman Godfrey* was whether a professional services exclusion of a general liability policy (not professional liability coverage) applied to defamation claims that fell squarely within the general liability policy's coverage. Notably, it is well-established that exclusions are strictly construed against the insurer and in favor of coverage.[99] Thus, a decision narrowly construing a "professional services" exclusion in a general liability policy has no application to Ironshore's duty to defend claims for breach of fiduciary duty pursuant to their professional liability policy. In contrast, Ironshore's duty to defend is based on a liberal reading of the Petition, with all doubts resolved in favor of Plaintiffs.

Moreover, the professional services exclusion in the *Susman Godfrey* policy is significantly more narrow in scope than the grant of coverage in the Policy before the Court. The exclusion applied to advertising injury "***due to*** the rendering of or failure to render professional services." The insuring agreement in the Policy purchased by Plaintiffs, on the

---

[96] *Id.* at 476. (emphasis added).
[97] *Id.* at 476.
[98] Dkt. 27, p. 18.
[99] *See e.g.*, *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex. 1984) (it is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage); *Essex Ins. Co. v. Clark*, 3:09-CV-1196-B, 2010 WL 3911424 (N.D. Tex. Oct. 5, 2010) (if a contract is susceptible to two or more reasonable interpretations it must be strictly construed in favor of the insured to avoid an exclusion of coverage).

other hand, extends to Claims "***arising out of*** the rendering of or failure to render Professional Legal Services." The Texas Supreme Court has held that "due to" has a different meaning than "arising out of," concluding that "arising out of" means a loose "causal connection or relation," while "due to" "requires a more direct type of causation."[100]

Finally, *Susman Godfrey* is factually inapposite. The underlying lawsuit in *Susman Godfrey* was brought by an opposing party who was alleging that the firm made defamatory statements in a letter soliciting business from a prospective client. Here, the lawsuit was brought by a former client alleging conduct (*i.e.*, breach of fiduciary duty) that was actionable only by virtue of the attorney-client relationship that existed between Hill and Plaintiffs. Distinct from the solicitation letter sent to a business prospect in *Susman*, the performance incentive bonus at issue in the Hill Lawsuit was inextricably intertwined with the Plaintiffs' legal representation of Hill. Together with the wide scope of the "arising out of" phrase, the entanglement of the performance incentive bonus with the Plaintiffs' provision of Professional Legal Services placed the Hill Lawsuit squarely within the Policy's coverage, triggering Ironshore's duty to defend.

In *Gregg & Valby*, two underlying lawsuits were brought by home purchasers against the lenders and the *lenders'* law firm, Gregg & Valby. The lawsuits alleged that the insured law firm violated the Real Estate Settlement Procedures Act ("RESPA") "by either splitting the 'Document Preparation Fee' between itself and its lender or by kicking back to the lender a portion of the fee 'pursuant to an agreement' between the two parties."[101] The insured law firm was engaged by the lenders to assist in the preparation and review of various legal documents used at closing, including deeds, promissory notes, and deeds of trust. Notably, as in *Susman Godfrey*, the plaintiff in *Gregg & Valby* was never represented by the insured law firm. The

---

[100] *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, CIV.A. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008).
[101] *Id.* at 512.

court concluded that the disposition of fees paid, in whole or in part, by the plaintiff home buyers at closing did not involve the insured law firm's professional services.

*Gregg & Valby* provides no support for Ironshore's refusal to defend Plaintiffs against claims by their *former client* alleging breach of fiduciary duty, unconscionable and outrageous conduct during the course and scope of the attorney-client relationship, as well as the threat of and disclosure of confidential client information. To the contrary of Ironshore's assertion that, "just as [in this matter], no complaints were made regarding the actual legal work or advice that the law firm provided" in *Gregg & Valby*, Hill complained that the alleged pressure and misconduct of Plaintiffs interfered with the rendering of professional legal services to such a degree it required Hill to fire Plaintiffs as counsel.[102] Moreover, unlike Hill's allegations of conspiracy and extortion, in *Gregg & Valby*, there were no allegations of malfeasance based on the attorney's legal services. These allegations in the Hill Lawsuit, coupled with the allegations that the Plaintiffs threatened to and did ultimately disclose confidential information and breached fiduciary duties owed to Hill, clearly trigger Ironshore's duty to defend under applicable law.

**2. *Shore Chan is controlling.***

As demonstrated, *Susman Godfrey* and *Gregg & Valby* are easily distinguishable from the matter at hand. The controlling case, rather, is the Northern District's decision in *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*[103] As *Shore Chan* can hardly be distinguished from the instant matter, Ironshore tries to label it a rogue case, alleging without support that "*Shore Chan* is directly contrary to the overwhelming body of case law."[104]

---

[102] Dkt. 27, p. 19.
[103] *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 856 F. Supp. 2d 891 (N.D. Tex. 2012).
[104] Ironshore also inappropriately suggests that because *Shore Chan* was "settled at mediation… [it] was never reviewed by the United States Fifth Circuit Court of Appeals." Such inappropriate reference in no way detracts from either its precedential value or its applicability.

The position Ironshore takes in its Motion was rather convincingly rejected by the analysis of this Court in *Shore Chan*. In *Shore Chan*, the insured law firm was sued by a lawyer with whom it allegedly had a referral fee agreement. The court flatly rejected arguments that the policy, virtually identical to the one here, required damages to arise from an act of malpractice in providing legal services to a client.[105] The court found an indirect connection between the services for the client existed based on the fact that *but for* providing services to the clients in question, the *Shore Chan* firm would not have had a referral fee conflict. Moreover, the settlements entered into by the insureds generated the fees that were then in dispute in the referral fee action. The Court did not require a direct causal connection between an act of malpractice relating to actual work for the client. The indirect fact that the fees being disputed were the subject of settlements, which involved professional services, was sufficient to invoke coverage even though nothing was alleged indicating that malfeasance was committed in respect to the negotiations and actual settlements reached in the case.[106]

It is reasonable to conclude that the argument in favor of the duty to defend the Plaintiffs here is even stronger than in *Shore Chan.* Rather than it being a suit by a third party other than the actual client, the Hill Lawsuit is one brought directly by the client against the lawyer. The Plaintiffs were preparing for a mediation and trial and negotiating a settlement for Hill when the alleged misconduct and actions that became the subject of dispute arose. Moreover, the alleged breach of fiduciary duty by Plaintiffs arose during their representation of Hill and was the result of failing to properly analyze whether the fee changes being proposed were appropriate or ethical, which requires the specialized knowledge of professional attorneys and constitutes the

[105] *Id.* at 898 (the insured law firm need not demonstrate that the professional services were a "substantial factor" that led to the underlying lawsuit, but that there is a causal connection, whether direct or indirect, between its services and the injury).
[106] *Id.* at 898-899.

provision of legal services.[107]

**B. *Hill Alleged that Plaintiffs Threatened to Influence the Case.***

The Petitions filed by Hill *each* clearly allege an attorney-client relationship existed between the Plaintiffs and Mr. Hill. While Plaintiffs were clearly in the midst of efforts to settle the litigation, which is unquestionably the provision of "professional legal services" by Plaintiffs to Hill, the Plaintiffs allegedly conspired to extort Hill in order to force him to agree to the performance bonus; which itself arose out of the settlement counsel services provided to Hill. In other words, Hill asserts the Plaintiffs attempted to settle the litigation (in which they were engaged by Hill to act as settlement counsel) in a manner that allegedly would have taken advantage of and would have been adverse to Hill.

In the Third Amended Petition, Hill alleged:

> Mr. Shamoun and Ms. Wright ***timed their presentation of this proposed midstream change*** to their hourly engagement agreements to immediately precede the May 5, 2010 court-ordered settlement conference and the impending May 10, 2010 federal trial. [emphasis added].

In light of this reference by Hill to the *timing* of Plaintiffs' alleged demand for Hill to enter into the bonus agreement, it is reasonable to conclude that, as Hill alleged it, Plaintiffs intended to use the leverage they possessed as counsel on the eve of a high-stakes trial to force Hill into the agreement. In its Motion, Ironshore asserts that allegations supporting Hill's theory "are not actually contained anywhere in the Hill Claim."[108] To the contrary, Hill's references to the timing of Plaintiffs' demand are unmistakable:

---

[107] It should be noted as well that, contrary to Ironshore's brief, *Susman Godfrey* was not a Texas Supreme Court case. Nonetheless, the knowledge and application of specialized knowledge of legal and ethical rules is particular to an attorney's vocation, as recognized in *Susman Godfrey*. *Atl. Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Tex. App—Dallas 1998, pet. denied).

[108] Dkt. 27, p. 25.

> Mr. Shamoun and Ms. Wright approached Mr. Hill in the **critical days** immediately before a court-ordered settlement conference. They demanded that Mr. Hill agree to a proposed "performance incentive bonus agreement….[109] [emphasis added].
>
> [Mr. Shamoun and Ms. Wright] exploited their relationship with their client and placed themselves in a superior bargaining position to their client by demanding this unconscionable additional fee at a **critical time.**[110] [emphasis added].
>
> Mr. Shamoun and Ms. Wright tried to **use this knowledge** [of the impending settlement conference and trial] **to their benefit** and to Mr. Hill's detriment, exerting pressure on him to pay an additional contingency fee….[111] [emphasis added].

As can be seen from the allegations, Hill believed Plaintiffs fully intended to time their threats to force him to agree to the bonus, and that Plaintiffs planned to use the timing "to their benefit." Furthermore, this Court may draw inferences from Hill's allegations that lead to a finding of coverage.[112]

Hill's allegations are clear; yet, Ironshore argues in its Motion that Hill's pleadings *only* assert that S&N threatened to file *its lawsuit* if Hill did not accept the bonus.[113] However, because Hill forcefully asserts the importance of the timing of the alleged "threats and demand," it is reasonably inferred that Hill believed, and feared, that unless he agreed to the proposed bonus, S&N and Shamoun would perform detrimentally to Hill at the mediation and at trial. Indeed, as Hill pleaded, Hill was forced to terminate S&N and Shamoun as counsel. Ironshore

---

[109] *See* Exhibit E, App. 103.
[110] *See* Exhibit E, App. 103.
[111] *Id.*
[112] *See e.g., Gen. Star Indem. Co. v. Gulf Coast Marine Associates, Inc.*, 252 S.W.3d 450 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (the eight corners rule does not require the court to ignore inferences logically flowing from the facts alleged in the underlying petition); also, *Lib. Mut. Ins. Co. v. Graham*, 473 F.3d 596, 601 (5th Cir.2006) (citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex.2005)) ("Accordingly, when a court applies the eight-corners rule, it must consider 'any reasonable inferences that flow from the facts alleged.'").
[113] "In reality, Hill alleges that S&N threatened to file the S&N Lawsuit to exert pressure on Hill to accept the bonus…." [Dkt. 27, p. 25].

also states that "these alleged 'threats' occurred after the Dallas County cases were settled."[114] By any reading of the allegations, Ironshore's assertion is erroneous. From the allegations, it is obvious that Hill is alleging that the threats and demands were made by Plaintiffs *before* Hill even went to mediation (*e.g.*, "in the critical days immediately before a court-ordered settlement conference"; "demanding this unconscionable additional fee at a critical time"). In fact, such alleged threats and demands caused Hill to fire his counsel. As a result, as a matter of law, Hill asserted that S&N and Mr. Shamoun rendered legal services adverse to him; thus, Ironshore's duty to defend was triggered.

**C. *Ironshore Failed to Act Consistent with Insurance Industry Standards.***

In addition to Ironshore's duty to defend, Ironshore owed Plaintiffs a duty of good faith and fair dealing, which they clearly breached by positing a defense and then withdrawing it merely upon Plaintiffs' request that the defense be unqualified. The Supreme Court of Texas has stated that the "duty of good faith and fair dealing emanates from the special relationship between the parties and not from the terms of the [insurance] contract."[115] In stating it was "unclear whether the particular actions complained of… ar[ose] out of the provision of Professional Legal Services," and then requesting that Plaintiffs "let [Ironshore] know which [law] firm you would like to represent your interests in this matter," it can be fairly stated that Ironshore recognized its obligation to defend Plaintiffs in the Hill Lawsuit. However, Ironshore abruptly withdrew its offer of a defense, despite no additional pleadings being filed by Hill. This conduct by Ironshore was clearly outside of Insurance industry standards and practices, a fact supported by Michael W. Huddleston ("Mr. Huddleston"), an expert retained by Plaintiffs to provide an opinion on the conduct of Ironshore. Mr. Huddleston concluded Ironshore's

---

[114] *Id.*
[115] *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994).

"withdrawal of a defense [was] pretextual and in bad faith."[116] He opined that "Ironshore's interpretation of the policy was unreasonable under insurance industry standards because it relie[d] upon industry labels rather than the language of the policy and the factual allegations of the underlying petition."[117] He concluded that "Ironshore breached its duty of good faith, violated the Texas Insurance Code and [Texas Deceptive Trade Practices Act], and that such conduct was a producing and/or proximate cause of damages to the insureds in this case."[118]

## VII. CONCLUSION

The eight corners of the Policy *and* the Petitions dictate as a matter of law that Ironshore owed a duty to defend Plaintiffs in the Hill Lawsuit. There is no factual dispute between the parties. Through reasonable interpretation of the application of the Policy's language to the allegations, as well as the well-developed case law establishing that the duty to defend arises when there are allegations that *even potentially* would be covered, it is clear as a matter of law that Ironshore breached the Policy by failing to provide Plaintiffs a defense beginning with Ironshore's refusal on August 10, 2011 to defend Plaintiffs against the claims alleged by Hill in Hill's Original Petition on July 19, 2011. Plaintiffs have met their burden of proof for summary judgment and respectfully request this Court to grant their Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court deny Motion for Summary Judgment of Defendant Ironshore Indemnity, Inc.; declare as a matter of law that Ironshore owed Plaintiffs a duty to defend the Hill Lawsuit and that by failing to defend the Policy was breached.

---

[116] *See* Exhibit G-1, App. 129.
[117] *See* Exhibit G-1, App. 130.
[118] *See* Exhibit G-1, App. 135.