UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHAMOUN & NORMAN, LLP, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:14-CV-1340-G |
| IRONSHORE INDEMNITY, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the plaintiffs' motion for partial summary judgment (docket entry 20) and the defendant's motion for summary judgment (docket entry 26). The court grants the plaintiffs' motion and denies the defendant's motion for the reasons discussed below.

I. BACKGROUND

A. Factual Background

This case concerns the extent of coverage under a professional liability policy (the "policy"). The plaintiffs, Shamoun & Norman, LLP (the "law firm"), and C. Gregory Shamoun, purchased a professional liability policy from the defendant,

Ironshore Indemnity Incorporated ("Ironshore"). Third Amended Complaint ¶ 7 (docket entry 19). The policy required Ironshore to defend and, if necessary, indemnify the law firm against claims "arising out of the rendering of or failure to render **Professional Legal Services**."[1] Lawyers Professional Liability Policy §I.A & B, Exhibit A-12 to Appendix in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Appendix") at 49 (emphasis in original) (docket entry 22). Throughout its one-year coverage period, which began on June 1, 2011, the policy only applied to claims accruing after June 1, 2008. *Id.* at 62.

Beginning in November 2009, the law firm represented Albert G. Hill, Jr., in various litigation matters. Plaintiff's Original Petition ¶ 13, Exhibit 2 to Appendix in Support of Defendant's Motion for Summary Judgment ("Defendant's Appendix") at 24 (docket entry 28). After its representation of Hill ceased, the law firm brought suit against him for allegedly breaching a performance incentive bonus agreement (the "incentive agreement"). *Id.* ¶¶ 19-30, Defendant's Appendix at 25-28. In response, Hill filed a third party petition against both the law firm and Shamoun on July 19, 2011. Third Party Plaintiff's Original Petition, Exhibit 4 to Defendant's Appendix.

---

[1] The policy's coverage extended to C. Gregory Shamoun in his capacity as law firm partner. Lawyers Professional Liability Policy § II.H(3), Plaintiffs' Appendix at 50 (stating that in the case of a limited liability partnership, "'**Insured**' shall mean . . . [the] limited partnership and each lawyer who is partner thereof including any incorporated partner and each shareholder or any such incorporated partner").

This petition presents a breach of fiduciary duty claim, among other claims. *Id.* ¶ 5.1, Defendant's Appendix at 65. Hill depicts the incentive agreement as an effort by the law firm to increase attorneys' fees when they realized the "litigation dispute was going to be resolved in a manner acceptable to Hill." *Id.* ¶ 4.3, Defendant's Appendix at 65.

The law firm sent a letter to Ironshore to notify it of Hill's claims. July 27, 2011, Letter from Plaintiffs to Anthony Fornaro, Exhibit A-1 to Plaintiffs' Appendix at 3-4. Ironshore responded to this letter by accepting the defense of the claims under a reservation of rights. August 5, 2011, Letter from Ironshore to Plaintiffs, Exhibit A-2 to Plaintiffs' Appendix at 5. To justify its reservation of rights, Ironshore noted, "It is unclear whether the particular actions complained of in the Third Party Complaint … arise out of the provision of **Professional Legal Services**." *Id.* at 7 (emphasis in original). Unhappy with the reservation of rights, the law firm "demand[ed] an unqualified defense" of the matter. August 8, 2011, Letter from Plaintiffs to Ironshore, Exhibit A-3 to Plaintiffs' Appendix at 9. Two days after this demand, Ironshore determined that the claims did not fall within the coverage of the law firm's policy. August 10, 2011, Letter from Ironshore to Plaintiffs, Exhibit A-4 to Plaintiffs' Appendix at 10. Ironshore averred that "under Texas law, a professional liability insurer is not obligated to defend its insured against a fee dispute because the

conduct at issue, fee billing collection, is not the rendering or failure to render professional services." *Id.*

The trial of the Hill dispute determined that none of the parties were entitled to any recovery. Certified Copy of "Final Judgment" in the Hill Lawsuit, Exhibit F to Plaintiffs' Appendix at 110-11. This judgment made any dispute regarding indemnification moot. Therefore, the only issue under contention is whether, under the policy, Ironshore had a duty to defend the plaintiffs in the Hill dispute. The answer to this question depends on whether Hill's claims are "arising out of the rendering of or failure to render **Professional Legal Services**." Lawyers Professional Liability Policy § I.A & B, Plaintiffs' Appendix at 49 (emphasis in original).

## B.  Procedural Background

The plaintiffs originally filed suit in the County Court at Law No. 1, Dallas County, Texas. Defendant's Notice of Removal ¶ 1 (docket entry 1). On diversity of citizenship grounds, Ironshore removed the case to this court through 28 U.S.C. § 1441. *Id.* ¶¶ 6-11. After removal, the plaintiffs filed a third amended complaint which superseded the three prior complaints. Third Amended Complaint; *see also* Index of State Court Materials, Exhibits A-2, A-3, A-5 (docket entry 1, Attachment 3). The plaintiffs then filed the instant motion for partial summary judgment, requesting the court to "declare as a matter of law that Ironshore owed Plaintiffs a duty to defend the Hill Lawsuit and that by failing to defend the Policy was

breached." Plaintiffs' Motion for Partial Summary Judgment at 2. In response, Ironshore requested the court "to issue a dispositive summary judgment in its favor on both the duties to defend and indemnify and remaining claims dependent upon coverage." Defendant's Motion for Summary Judgment at 2. The court now turns to the disposition of these two motions.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving

party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### B. Interpretation of Insurance Policies Under Texas Law

#### 1. *Generally*

Under Texas law, the "eight corners" rule guides any inquiry concerning insurance policy coverage. See *National Union Fire Insurance Company of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). This rule requires analyzing "the allegations in the pleadings and the language of the insurance policy."

*Id.* at 141 (citing *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 847-48 (Tex. 1994)).  Courts generally avoid referencing all evidence outside the four corners of these two documents.  *Mid-Continent Casualty Company v. JHP Development, Inc.*, 557 F.3d 207, 212 (5th Cir. 2009).  Moreover, when analyzing the pleadings, a court does not assess the truth or falsity of the allegations.  *Id*.  Instead, the duty to defend is triggered if the plaintiff's factual allegations "potentially support a covered claim."  *Id.*

"The insured bears the initial burden to establish that its claim falls within the scope of coverage provided by the policy.  Should the insured establish a right to coverage, the burden then shifts to the insurer to demonstrate that the claim is subject to a policy exclusion."  *Burlington Northern & Santa Fe Railway Company v. National Union Fire Insurance Company of Pittsburgh*, 394 S.W.3d 228, 232-33 (Tex. App.--El Paso 2012, pet. denied) (internal citations omitted).  When considering if the parties have met these burdens, a court should interpret the pleadings liberally.  See *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141.  In other words, "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor."  *Id.* (quoting *Heyden Newport Chemical Corporation v. Southern General Insurance Company*, 387 S.W.2d 22, 26 (Tex. 1965)).  "[O]nce coverage has been found for any portion

of a suit, an insurer must defend the entire suit." *Blanton v. Continental Insurance Company*, 565 F. App'x 330, 334 (5th Cir.) (quoting *St. Paul Insurance Company v. Texas Department of Transportation*, 999 S.W.2d 881, 884 (Tex. App.--Austin 1999, pet. denied)), *cert. denied*, __ U.S. __, 2014 WL 4259944 (2014).

### 2.  *The Meaning of Professional Services*

Texas state courts and federal courts applying Texas law have concluded that professional services include only "those services for which professional training is a prerequisite to performance." *Guaranty National Insurance Company v. North River Insurance Company*, 909 F.2d 133, 136 (5th Cir. 1990) (quoting *Duke University v. St. Paul and Marine Insurance Company*, 386 S.E.2d 762, 766 (N.C. Ct. App.), *review denied*, 393 S.E.2d 876 (N.C. 1990)).  In other words, "[p]rofessional services are considered those acts which use the inherent skills *typified* by that profession, not *all* acts associated with the profession." *Atlantic Lloyd's Insurance Company of Texas v. Susman Godfrey, LLP*, 982 S.W.2d 472, 477 (Tex. App.--Dallas 1998, pet. denied) (emphasis in original) (citing *Bank of California v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981)).  Thus, practices such as billing and fee setting are generally not characterized as professional services.  *Gregg & Valby, LLP v. Great American Insurance Company*, 316 F. Supp. 2d 505, 513 (S.D. Tex. 2004) (noting that "the court has little trouble concluding that Plaintiff's billing and fee-setting practices are not 'professional services'").

3. *The Meaning of the Phrase "Arising Out Of"*

In *Shore Chan Bragalone Depumpo LLP v. Greenwich Insurance Company*, this court analyzed how to define the phrase "arising out of" when an insurance policy remains silent on the matter. 856 F. Supp. 2d 891 (N.D. Tex. 2012) (Boyle, J.). The *Shore Chan* case concerned a dispute over an insurance policy's duty to defend provision. *Id.* at 893. In relevant part, the policy required the insurer to defend a claim for "any demand received by [the insured] for money, services or any other thing of value arising out of [the insured's] acts, errors, or omissions in providing professional services." *Id.* at 894. The dispute began after a third party sued the insured, a law firm, for its alleged breach of a referral agreement. *Id*. The third party accused the law firm of failing to pay a percentage of fees earned from referred clients. *Id.* After being notified of the lawsuit, the insurer chose not to defend the law firm, claiming that the lawsuit "did not arise out of professional services." *Id.* (internal quotation marks omitted).

The law firm, believing the insurance policy entitled it to coverage, sued the insurer. *Id.* Applying a liberal interpretation of the phrase "arising out of," the court concluded that the insured's alleged failure to pay the third party arose from professional services. *Id.* at 899. The court noted "that 'arise out of' requires only a causal connection or relation between the act and the alleged injury." *Id.* at 898 (citing *Utica National Insurance Company of Texas v. American Indemnity Company*, 141

S.W.3d 198, 203 (Tex. 2004)). The court also referenced Fifth Circuit interpretations of Texas law holding that "the words 'arising out of,' when used within an insurance policy, are broad, general and comprehensive terms effecting broad coverage." See *Willbros RPI, Inc. v. Continental Casualty Company*, 601 F.3d 306, 311 (5th Cir. 2010) (quoting *American States Insurance Company v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998)) (internal quotation marks omitted). While the court conceded the defendant was "alleged to have breached a contract rather than performed negligently while providing legal services," it concluded that "the contractual relationship nonetheless relates to [the insured's] performance as attorneys." *Shore Chan*, 856 F. Supp. 2d at 899.

As the defendants did in *Shore Chan*, the defendants in the present case rely heavily on *Gregg & Valby*. *See* Defendant's Brief in Support of Motion for Summary Judgment at 14 (docket entry 27). That case presented a similar dispute between an insured and insurer. See *Gregg & Valby*, 316 F. Supp. 2d at 506-07. The insurance policy at issue included a duty to defend any demand for money or services arising out of the performance of professional services. *Id.* at 510. The court concluded that the insurer did not have a duty to defend the insured in the litigation because billing and fee setting "are not acts constituting 'professional services.'" *Id.* at 515.

While billing and fee setting may not be "acts constituting 'professional services,'" this does not answer whether they are acts "arising out of professional

services." *Id.* The phrase "arising out of" appears three times in the policy language quoted by the *Gregg & Valby* court. *Id.* at 510. However, the court fails to discuss the pertinence of this phrase. See *id*. If the court failed to ascribe any meaning to the phrase, then it violated the rule against surplusage. See, *e.g.*, *Ewing Construction Company, Inc. v. Amerisure Insurance Company*, 420 S.W.3d 30, 37 (Tex. 2013) ("[I]nterpretations of contracts as a whole are favored so that none of the language in them is rendered surplusage."). Assuming the court did consider the phrase's meaning, then it interpreted "arising out of" extremely narrowly, demanding a form of causation akin to proximate cause.

Less than a year after the *Gregg & Valby* ruling, the Texas Supreme Court stated that "'arise out of' means that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica National Insurance Company of Texas*, 141 S.W.3d at 203 (internal quotation marks and citations omitted). This opinion presents the current interpretation of "arise out of" under Texas law -- an interpretation followed correctly by this court in *Shore Chan*. 856 F. Supp. 2d at 898.

     C. <u>Application of Law to the Present Dispute</u>

      1. *The Professional Liability Policy*

As always, the court begins with the policy's text to evaluate the parties' intentions. The policy describes the duty to defend as follows:

> The **Insurer** shall have the right and duty to defend any **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** and arising out of the rendering of or failure to render **Professional Legal Services**, including an appeal thereof, seeking **Damages** to which this insurance applies even if any of the allegations are groundless, false, or fraudulent.

Lawyers Professional Liability Policy §I.B, Plaintiffs' Appendix at 49 (emphasis in original). As mentioned above, the plaintiffs promptly notified Ironshore of Hill's claims for damages. July 27, 2011, Letter from Plaintiffs to Anthony Fornaro, Plaintiffs' Appendix at 3-4. Furthermore, these claims fall within the policy's retroactive coverage period. *See* Plaintiff's Original Petition ¶¶ 13-30, Defendant's Appendix at 24-28; Lawyers Professional Liability Policy, Plaintiffs' Appendix at 62. This leaves a single issue of contention between the parties: whether Hill's claims are "arising out of the rendering of or failure to render **Professional Legal Services**." *Id.* § I.B, Plaintiffs' Appendix at 49.

The policy defines the phrase professional legal services as follows:

> "**Professional Legal Services**" shall mean legal services and activities performed for others as a lawyer, and *including* pro bono legal service, services as a notary public, arbitrator, mediator, title insurance agent, designated issuing lawyer to a title insurance company, fiduciary, services rendered as a member of a bar association, ethics, peer review, formal accreditation board or similar professional boards or committees, or the publication or presentation of research papers or similar materials by an **Insured** . . .. **Professional Legal Services** shall *include* services as an administrator, conservator, receiver, executor,

>      guardian, or in any similar fiduciary capacity, or trustee, if
>      such services are usual and customary to the practice of law
>      and are in the rendering of professional services to others
>      in an attorney client relationship.

*Id.* § II.M, Plaintiffs' Appendix at 51 (italics emphasis added; bold emphasis in original). The terms "include" and "including" generally introduce non-exhaustive lists of professional legal services.[2] *See, e.g.*, TEX. GOV'T CODE § 311.005(13) (stating that when used in Texas statutes "'includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded"). If the parties had intended to present an exhaustive list, they would have done so clearly by inserting words of limitation (*e.g.*, *solely* or *strictly* includes) or using alternative phrasing (*e.g.*, professional legal services consist of *only* the following activities).

*Ejusdem generis* -- a maxim of contract interpretation meaning "of the same kind or character" -- instructs that any non-enumerated professional legal services should "have a reasonable degree of similarity to the items mentioned" in the enumerated list. 5-24 CORBIN ON CONTRACTS § 24.28. Because the enumerated tasks require specialized legal skills, the court concludes that non-specialized tasks such as billing

---

[2]  The first phrase of this definition (*i.e.*, "'**Professional Legal Services**' shall mean legal services and activities performed for others as a lawyer) adds little to the court's understanding. Other than noting that the definition includes only services performed for others, the phrase merely replaces the term "professional legal services" with "legal services and activities" -- a swap that does nothing to facilitate understanding.

and fee-setting do not fall under the definition of professional legal services -- a conclusion consistent with Texas case law.³  See, *e.g.*, *Guaranty National Insurance Company*, 909 F.2d at 136.

However, in the present policy, the phrase "arising out of the rendering of or failure to render" immediately precedes the defined text (*i.e.*, professional legal services). Lawyers Professional Liability Policy § I.B, Plaintiffs' Appendix at 49. The policy fails to define this significant phrase. See *id.* §II. When a policy lacks a definition, the court must give the terms their plain meaning. See *Don's Building Supply, Inc. v. Onebeacon Insurance Company*, 267 S.W.3d 20, 23 (Tex. 2008) ("Policy terms are given their ordinarily and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning."). As discussed above, under Texas law, the phrase "arising out of" means "that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica National Insurance Company of Texas*, 141 S.W.3d at 203 (internal quotation marks omitted). Therefore, in this case, if Hill's claims against the plaintiffs had a "causal connection

---

<sup>3</sup>    The court notes that this narrow definition arguably begs the question of how broadly to define professional legal services. While all of the enumerated tasks require specialized skills, they inevitably result in billing and fee setting. The question remains whether to include these aspects of the activities within the definition of professional legal services. The analysis below, however, makes this issue inconsequential.

or relation" to the provision of professional legal services, then Ironshore possessed a duty to defend. *Id.*

## 2. *Mr. Hill's Complaint*

Based on the claims in Hill's complaint, the court concludes Ironshore had a duty to defend the plaintiffs in the Hill action and thus breached the policy by failing to provide defense counsel. In Hill's original complaint, he alleged the plaintiffs "had a fiduciary duty to their client which they breached." Third Party Plaintiff's Original Petition ¶ 5.1, Defendant's Appendix at 65. But for the plaintiffs' attorney-client relationship with Hill, there would be no claim for breach of fiduciary duty. Therefore, the claim has a "causal connection or relation" to the plaintiffs' provision of professional legal services. *Utica National Insurance Company of Texas*, 141 S.W.3d at 203. While the facts giving rise to this suit may even satisfy a proximate cause test, the court does not need to undertake this inquiry once the but for requirement is met. See *id*.

In subsequent amended complaints, Hill added claims for civil conspiracy, breach of contract, and declaratory relief. *See* Albert G. Hill, Jr.'s Third Amended Third-Party Petition and Counter-Claim ¶¶ 5.18-5.33, Exhibit 7 to Defendant's Appendix at 98-101. While these claims likely "relate to" the attorney-client relationship between the parties, analyzing these claims individually is unnecessary because "[o]nce coverage has been found for any portion of a suit, an insurer must

defend the entire suit." *Blanton*, 565 F. App'x at 334 (quoting *St. Paul Insurance Company*, 999 S.W.2d at 884). The requirement that "[w]hen applying the eight corners rule, [a court must] give the allegations in the petition a liberal interpretation" only buttresses the court's conclusion. See *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141.

### III.  CONCLUSION

For the reasons detailed above, the plaintiffs' motion for partial summary judgment is **GRANTED**, and the defendant's motion for summary judgment is **DENIED**.

**SO ORDERED**.

October 28, 2014.

_____
A. JOE FISH
**Senior United States District Judge**